STEVENSON, J.
 

 Defendant appeals the denial of his motion to suppress which preceded his convictions for possession with intent to sell, manufacture or deliver cocaine within 1000 feet of a park, community center or recreational facility and resisting an officer without violence. Because Defendant was subjected to a detention not supported by reasonable suspicion, we reverse the convictions.
 

 At Defendant’s motion to suppress hearing, Detective George McLain of the Stuart Police Department testified that he received an email indicating that “suspicious activity” was occurring near a strip mall barber shop that was not yet open for business. The person providing the information was employed in a store in the strip mall, but wished to remain anonymous. The email reported that males, most with dreadlocks, were “congregating” at the barber shop; that people would walk to the front door, make a call and then enter the barber shop through the back door; and that this activity would occur at night and people would leave their cars running while they were in the barber shop. The detective had not previously received complaints regarding the strip mall.
 

 McLain and his partner, Detective Orta-do, drove over to the strip mall around four o’clock in the afternoon and observed Defendant and ten to fifteen males standing near the barber shop. Some of the men had dreadlocks, including Defendant. The men watched the detectives each time they rode by in the police vehicle. When the detectives exited the vehicle, the men entered the barber shop. Ortado followed the men to the barber shop back door and McLain approached Defendant, who was sitting in a parked car with the windows down and doors closed. As McLain walked towards the car, Defendant looked into the center console and then looked up at the detective. McLain saw the console lid open and close, but could not see Defendant’s hands. When McLain reached Defendant and asked him what he had done, Defendant denied going into the console. McLain testified that he asked Defendant to exit the vehicle because he was concerned for officer safety and concerned that there was something “dangerous” in the console. Defendant did not seem to have a problem getting out of the car, but reached back into the console as he was getting out. Defendant turned his body as if to block McLain’s view so McLain moved and observed Defendant “cup” something in his hand and place it into his right pocket. When McLain asked Defendant what he had placed in his pocket, Defendant said “nothing.” Defendant appeared nervous and fidgety and was breathing rapidly. McLain did not observe anything that appeared to be a weapon on Defendant, but told Defendant that he was going to conduct a pat down. When he attempted to do so, Defendant swatted his hand away. Defendant was then arrested. During the subsequent search, crack cocaine was discovered on Defendant, as well as $2000 in cash.
 

 A trial court’s factual findings on a motion to suppress are accorded a presumption of correctness; however, application of the law to the facts is reviewed de novo.
 
 See Rigterink v. State,
 
 66 So.3d 866, 884 (Fla.2011). To conduct an investigatory stop, the officer must have reasonable suspicion that the person “ ‘has committed, is committing, or is about to commit a crime.’ ”
 
 M.M. v. State,
 
 72 So.3d 328, 330 (Fla. 4th DCA 2011) (quoting
 
 Fuentes v. State,
 
 24 So.3d 1231, 1234 (Fla. 4th DCA 2009)). Whether an officer has reasonable suspicion for a stop depends on the totality
 
 *1143
 
 of the circumstances, interpreted in consideration of the officer’s knowledge and experience.
 
 See Ippolito v. State,
 
 789 So.2d 428, 425 (Fla. 4th DCA 2001).
 

 When Detective McLain asked Defendant to exit the car, a seizure occurred.
 
 See Miranda v. State,
 
 816 So.2d 132, 135 (Fla. 4th DCA 2002) (holding that when defendant was ordered out of car, the consensual encounter was transformed into a seizure). However, the detective lacked reasonable suspicion to detain Defendant. The person providing the information in the email wished to remain anonymous, placing the tip very low on the reliability scale.
 
 See J.L. v. State,
 
 727 So.2d 204, 206 (Fla.1998) (“Tips from known reliable informants, such as an identifiable citizen who observes criminal conduct and reports it, along with his own identity to the police, will almost invariably be found sufficient to justify police action.”). Further, the tip was vague and contained no allegations of criminal activity, but only “suspicious,” yet innocent, behavior.
 
 See Butts v. State,
 
 644 So.2d 605, 606 (Fla. 1st DCA 1994) (tip failed to provide reasonable suspicion where it “ ‘offered nothing more than innocent details of identification that could have been provided by any pilgrim on the roadway1 ”) (quoting
 
 Robinson v. State,
 
 556 So.2d 450, 452 (Fla. 1st DCA 1990)). Finally, Defendant’s conduct of reaching into the console, appearing “nervous,” and lying to the detective similarly did not provide reasonable suspicion for the detention.
 
 See Johnson v. State,
 
 640 So.2d 226, 227 (Fla. 5th DCA 1994) (officer lacked reasonable suspicion based on defendant telling a lie where, in the late evening, defendant was standing at trunk of car trying to conceal something because lying “is not a crime”);
 
 see also Popple v. State,
 
 626 So.2d 185, 186, 188 (Fla.1993) (officer lacked founded suspicion to request defendant to exit vehicle where defendant was near high crime area, sitting in parked car on side of road, appeared nervous, reached underneath his seat and began “flipping” about in the car). McLain never observed anything that appeared to be a weapon on Defendant and we reject the State’s contention that, under the totality of the circumstances, Defendant’s “baggy pants” gave the detective an additional reason to detain Defendant to determine if a weapon may have been concealed therein. Because Detective McLain lacked reasonable suspicion, and due to the lack of any intervening circumstances, the physical evidence discovered during the subsequent pat down should have been suppressed.
 
 See, e.g., Wells v. State,
 
 975 So.2d 1235, 1238 (Fla. 4th DCA 2008) (“Under the ‘fruit of the poisonous tree’ doctrine, the exclusionary rule bars the admission at trial of physical evidence ... obtained directly or indirectly through the exploitation of the police illegality.”).
 

 Lastly, since the detention was illegal, the detective was not engaged in the “lawful” execution of a legal duty so as to support the resisting without violence conviction.
 
 See
 
 § 843.02, Fla. Stat. (2008) (“Whoever shall resist ... any officer ... in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree....”);
 
 Jay v. State,
 
 731 So.2d 774, 775 (Fla. 4th DCA 1999) (“An essential element of resisting an officer without violence is that the arrest is lawful.”). Accordingly, we reverse the instant convictions for possession of cocaine with intent to sell (count I) and resisting arrest without violence (count II), and direct that on remand Defendant be discharged.
 

 Reversed and remanded.
 

 MAY, C.J., and GROSS, J., concur.