862 So.2d 860 (2003)
Keith KALNAS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-4538.
District Court of Appeal of Florida, Fourth District.
December 10, 2003.
*861 Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Marni A. Bryson, Assistant Attorney General, Fort Lauderdale, for appellee.
STEVENSON, J.
After the trial court denied his motion to suppress, Keith Kalnas entered a nolo contendere plea to charges of burglary and grand theft, expressly reserving the right to appeal the trial court's ruling. In this appeal, Kalnas argues that the anonymous tip provided to police was not sufficient to justify an investigatory stop. We agree and reverse.
After hearing testimony of the arresting officer at the motion to suppress hearing, the trial court made the following findings:
[T]he Fort Lauderdale Police Department received an anonymous tip advising that a white male wearing bluejeans, a white shirt and a blue visor was trying doorknobs in the area of 1109 Northeast 17th Terrace.
Within two minutes after the issuance of a BOLO, based on the anonymous tip, Officer Michael Moniz located the defendant, Keith Kalnas, within one block of theof 1109 Northeast 17th Terrace.
At that time, Mr. Kalnas was observed to be a white male, wearing bluejeans and a blue visor. And he was further observed walking toward the area of 1109 Northeast 17th Terrace.
The court further finds that there had been several reported burglaries in that particular area.
Based on the foregoing facts, the trial court concluded that "the anonymous tip was sufficient to justify an investigatory stop as the Court finds that there is indicia of reliability."
This case requires the court to once again focus its attention on the much-maligned, and equally praised, "anonymous tipster." The supreme court in J.L. v. State, 727 So.2d 204 (Fla.1998), succinctly stated when an anonymous tip can provide the basis for well-founded suspicion:
[A]n anonymous tip can provide the basis for reasonable suspicion, provided that it can be established that the tip is reliable. A tip's reliability can be established in a number of different ways. A tip may describe suspicious details concerning conduct that is presently occurring or is about to occur in the future (i.e., a call received after midnight, on a warm summer evening, stating, "A person is carrying a gun; that person is wearing a ski mask and a long trench coat and is approaching a convenience store."). Verification by the police of *862 the suspicious details clearly provides the police with the requisite reasonable suspicion to make a Terry stop.
The more difficult case involves those tips which allege criminal conduct, but only describe "innocent details of identification," for which the details in and of themselves are in no way incriminating or indicative of criminal behavior. Innocent detail tips merely provide the police with verifiable details which are completely innocent in nature (i.e., a tip similar to the one in this case, which only describes innocuous clothing, location, etc.). Nevertheless, innocent detail tips can still prove to be reliable and be the foundation for reasonable suspicion.
Id. at 206-07 (citations omitted).
The anonymous tipster, here, gave detailed information of the crime being committedattempted trespass or burglary (the defendant was "trying" various doors in the neighborhood)and provided a detailed description of the subject. Yet, when the police officer arrived on the scene, he was only able to verify the innocent details of identification. The officer was unable to confirm or verify any of the allegations concerning the commission of a criminal offense. We find that this situation fits more within those types of cases which require independent police investigation in order to establish the tip's reliability. See, e.g., J.L., 727 So.2d at 205-06 (finding that the anonymous tip stating that several young black males were standing at a specified bus stop, and that one was wearing a plaid shirt and carrying a gun, was insufficient to justify a Terry stop, absent indication that police independently observed suspicious or illegal conduct).
This case is somewhat analogous to L.M. v. State, 694 So.2d 118 (Fla. 3d DCA 1997). There, the officer testified that around 7:00 p.m., she and another officer were patrolling when they received a radio dispatch regarding a theft in progress. See id. at 119. The dispatch gave information from an anonymous tip, indicating that two African-American youths were burglarizing a car in a fenced-in church parking lot two blocks from the officer's location. See id. Within a minute of the call, the officer turned the corner and immediately observed the youths, wearing clothing fitting the BOLO description, walking on the sidewalk adjacent to the church. The youths were not involved in any criminal activity. See id.
As the officers approached, the youths changed the direction in which they were walking. See id. The officer drove up to the youths, and detained them by parking her car in such a way as to block them. The officer instructed the youths to put their hands on the hood of the car and conducted a pat-down, during which she felt a hard, broad object. See id. Under these facts, the court found that the anonymous tip did not give rise to reasonable suspicion sufficient to justify the temporary detention of the youths since the tip was not corroborated by independent police investigation. See id. at 120.
Returning to the instant case, the anonymous tip relayed to Officer Moniz was that a white male had been observed trying door knobs in a residential neighborhood. The suspect was alleged to be wearing a white shirt, bluejeans and a blue visor. Officer Moniz responded to the call and noticed Kalnas wearing a white shirt, bluejeans and a visor, about a block or so away from the area where the tipster indicated that the man had been trying doors. Kalnas was walking with another man, at a normal pace, near the parking lot of a Burger King. Officer Moniz did not observe Kalnas trying any door knobs or engaged in any other suspicious behavior.
*863 Here, Officer Moniz was required to uncover something more than just a verification of the innocent details of identification in order to establish the reliability of this anonymous tip.[1] Of course, Officer Moniz could have properly engaged appellant in a voluntary police-citizen encounter in order to further investigate the call, but instead, as correctly found by the trial judge, Moniz instituted an investigatory stop and detention. Officer Moniz's failure to confirm the reliability of the tip makes Kalnas's detention, and the subsequent discovery of contraband, illegal. Thus, the trial court's finding that "the anonymous tip was sufficient to justify an investigatory stop" was error. We reverse and find that the items seized incident to Kalnas's arrest should have been suppressed.
REVERSED and REMANDED.
POLEN and SHAHOOD, JJ., concur.
NOTES
[1] The tipster, although a self-proclaimed "resident of the neighborhood," left no identifying information and cannot be considered a "citizen informant," which would itself raise the level of reliability of the tip.